KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4675
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
James H.M. Sprayregen, P.C. (JS 7757)
Robert G. Burns (RB 0970)
Leonard A. Budyonny (LB 4194)

Proposed Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**TRICO MARINE SERVICES, INC., et al.,**<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 04-_____ ( )**<br><br>**Jointly Administered** |

**APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a)**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a)**
**FOR AUTHORIZATION TO EMPLOY KIRKLAND & ELLIS LLP**
**<u>AS ATTORNEYS FOR THE DEBTORS</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Trico Marine Services, Inc. ("<u>TMS</u>"), Trico Marine Assets, Inc. ("<u>TMA</u>") and Trico Marine Operators, Inc. ("<u>TMO</u>," and together with TMS and TMA, "<u>Trico</u>" or the "<u>Debtors</u>"), as debtors and debtors in possession, respectfully represent:

**<u>INTRODUCTION</u>**

1. On the date hereof (the "<u>Commencement Date</u>"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code. Simultaneously with the filing of their petitions and this application (the "Application"), the Debtors requested an order for joint administration of their chapter 11 cases pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION

2. This Court has jurisdiction to consider and determine this Application as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### AN OVERVIEW OF THE DEBTORS' BUSINESSES

3. Trico and its direct and indirect Debtor and non-debtor subsidiaries (collectively, the "Trico Companies")[1] comprise a leading provider of marine support services to the oil and gas industry around the world. The Trico Companies operate a large, diversified fleet of vessels used in the transportation of drilling materials, crews and supplies necessary for the construction, installation, maintenance and removal of offshore drilling facilities and equipment. The Trico Companies' global fleet consists of more than 80 vessels and includes primarily platform supply vessels, supply boats, anchor handlers, crew boats, and line handling boats.

4. The Trico Companies' fleet services oil drilling and exploration sites throughout North America, South America, Europe, and West Africa. Currently, the four major geographical segments where the Trico Companies operate are: (i) the Gulf of Mexico market in

---

[1] The Trico Companies include Trico Marine Services, Inc. and its three direct domestic subsidiaries: Trico Marine Assets, Inc.; Trico Marine Operators, Inc.; and Trico Marine International, Inc. In addition, the Trico Companies include 11 direct and indirect foreign subsidiaries: Trico Servicos Maritimos Ltda. (Brazil); Coastal Inland Marine Services Ltd. (Nigeria); Trico Marine International, Ltd. (Cayman); Trico Marine International Holdings B.V. (Netherlands); Trico Supply AS (Norway); Trico Shipping AS (Norway); Trico Supply (UK) Limited (England & Wales); Albyn Marine Limited (England & Wales); CHH-Trico PTE Ltd. (Singapore); Servicos de Apoyo Maritimo de Mexico, S. de R.L. de C.V. (Mexico); and Naviera Mexicana de Servicios, S. (Mexico).

2

the United States, where approximately 46 Trico vessels are currently positioned; (ii) the North Sea market, which includes Norway and Great Britain, where Trico has approximately 16 vessels; (iii) the Latin America market, which includes Brazil and Mexico, with approximately 16 Trico vessels; and (iv) the West Africa market, which includes Nigeria and other West African countries, currently with five Trico vessels. Geographically, the Debtors' business operations are primarily positioned in the domestic Gulf of Mexico market. With respect to the Trico Companies, only TMS, TMA and TMO have commenced bankruptcy cases.

5. Incorporated in 1993 in Delaware, TMS has two principal domestic subsidiaries—TMA, also a Delaware corporation, and TMO, a Louisiana corporation. The Debtors' domestic workforce currently consists of approximately 330 employees. The Trico Companies' workforce consists of approximately 950 employees worldwide.

6. As of the Commencement Date, the Trico Companies had, on a consolidated basis, approximately $13 million in cash and cash equivalents. As of September 30, 2004, the Trico Companies' consolidated books and records reflected assets totaling approximately $535.2 million and liabilities totaling approximately $472.7 million. For the three months ending as of September 30, 2004, the Trico Companies, on a consolidated basis, reported revenues of approximately $29.5 million and net losses of approximately $16.2 million.

7. Despite the difficult market conditions in the worldwide offshore supply industry, the Trico Companies have established solid business relationships with a number of energy companies engaged in offshore drilling and exploration. To that end, TMO maintains master service agreements with nearly all major and independent service companies operating in the Gulf of Mexico. In the North Sea, the Trico Companies' non-debtor affiliates work with large integrated oil and gas companies, independent operators and foreign-government owned

entities. Finally, in the West Africa market, the Trico Companies have sought to increase their market share by partnering with the local offshore supply operators and other contractors.

### THE PROPOSED PREPACKAGED PLAN OF REORGANIZATION

8. On September 10, 2004, TMS announced that it reached a consensual restructuring agreement with a group of noteholders (the "Noteholder Group") holding approximately 67% of TMS's outstanding $250 million $8^{7/8}$% senior notes due May 15, 2012 (the "Senior Notes"), including an agreement to support the restructuring of the Debtors through a prepackaged bankruptcy proceeding (the "Plan Support Agreement"). In addition, the Debtors, prior to the Commencement Date, have obtained a commitment from certain of their prepetition lenders to provide a $75 million debtor-in-possession secured financing facility, convertible into a $75 million exit financing facility upon exit from chapter 11 (the "Postpetition Credit Agreement"). Subject to this Court's approval, the Debtors plan to use the proceeds obtained pursuant to the Postpetition Credit Agreement to fund ongoing operations and to retire certain outstanding prepetition indebtedness.

9. In view of the above, on November 12, 2004, TMS commenced, pursuant to the Plan Support Agreement, a solicitation of votes from the holders of the Senior Notes on the proposed prepackaged plan of reorganization (as may be subsequently amended, the "Plan"). The Senior Notes claimants represent the only class of claims as to which prepetition solicitation was required. Accordingly, the Debtors initiated, through their solicitation agent, the solicitation procedure with respect to all eligible Senior Notes claimholders, as of November 5, 2004, and concurrently established the voting deadline of December 13, 2004.

10. The Plan and the accompanying disclosure statement were provided to the eligible holders of the Senior Notes during the solicitation process and filed with this Court on the Commencement Date. If implemented, the Plan would effect a major deleveraging of the

Debtors' balance sheet, primarily through the conversion of the Senior Notes into equity of the reorganized TMS. Specifically, the Plan provides for the following:

- Each eligible holder of the Senior Notes would receive, in exchange for its total claim (including principal and interest), its pro rata portion of 100% of the fully diluted new common stock of the reorganized TMS, before giving effect to the exercise of the new warrants and implementation of a long term incentive plan.

- Existing eligible holders of TMS's common stock would receive, on a basis to be determined, new warrants that are exercisable for, in the aggregate, 10% of the new common stock of the reorganized TMS (before giving effect to the long term incentive plan). The new warrants will be structured as follows:

    (a) One tranche of the new warrants will be exercisable for 5% of the new common stock of the reorganized TMS (before giving effect to the long term incentive plan) for a period of five years after the effective date of the Plan, with a per share exercise price calculated on the basis of the value of TMS's equity at $187.5 million.

    (b) One tranche of the new warrants will be exercisable for 5% of the new common stock of the reorganized TMS (before giving effect to the long term incentive plan) for a period of three years after the effective date of the Plan, with a per share exercise price calculated on the basis of the value of TMS's equity at $250 million.

- On the effective date of the Plan, the sole equity interests in the reorganized TMS would consist of the new TMS common stock issued to the holders of the Senior Notes, the new warrants described above, and the options to be issued to certain employees of Trico pursuant to the long term incentive plan.

- Under the terms of the Plan and the Plan Support Agreement, the following would remain unimpaired: (i) Trico's obligations under existing operating leases or trade credit extended to Trico by its vendors and suppliers; (ii) the Norwegian credit facility, including the NOK 150 million term loan and the NOK 800 million revolving credit facility, both obligations of the Norwegian subsidiaries/affiliates of TMS; (iii) the existing obligations under the MARAD Notes; and (iv) the existing obligations under the Prepetition Credit Agreement (as such term is defined in the Affidavit of Trevor Turbidy Pursuant to Bankruptcy Rule 1007-2 filed contemporaneously herewith).

11. By December 13, 2004, the Debtors have received acceptances from 99.9% of all of the creditors eligible to vote on the Plan, which is well in excess of the requisite amount of votes necessary for the confirmation of the Plan. Accordingly, the Debtors have determined that it is in the best interests of all of their stakeholders to commence now these

5

prepackaged chapter 11 cases under the auspices of this Court in order to consummate a comprehensive, orderly and expeditious restructuring of the Debtors' businesses and to maximize the value of the Debtors' enterprise.

## RELIEF REQUESTED

12. The Debtors seek court approval, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), to employ and retain Kirkland & Ellis LLP ("K&E"), as the Debtors' attorneys to perform the extensive legal services that will be necessary during their chapter 11 cases. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of K&E, under a general retainer, in accordance with K&E's normal hourly rates and policies in effect when K&E renders the services or incurs the expenses.

13. The Debtors have been informed that the partners, counsel, and associates of K&E, who will be employed in these chapter 11 cases are members in good standing of, among others, the Bar of the State of New York and the United States District Court for the Southern District of New York. In addition, K&E attorneys who will be providing services to the Debtors in these cases are all members in good standing of their respective states of admission.

14. The Debtors have selected K&E as their attorneys because of the firm's knowledge of the Debtors' business and financial affairs and its extensive general experience and knowledge, and in particular, its recognized expertise in the field of debtors' protections and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code.

15. Since April 27, 2004, K&E has represented the Debtors in connection with several matters relating to their restructuring efforts, including, ultimately, the preparation and filing of the Debtors' chapter 11 petitions and related documents. During the course of its

representation of the Debtors, K&E has become familiar with the Debtors' businesses and financial affairs and many of the potential legal issues that may arise in the context of these chapter 11 cases.

16. In addition, K&E possesses extensive expertise, experience and knowledge practicing before bankruptcy courts, including this Court. K&E has been actively involved in major chapter 11 cases, and has represented debtors in many cases, including <u>In re Cornerstone Propane, L.P.</u>, Case No 04-13856 (RDD) (Bankr. S.D.N.Y. 2004); <u>In re NRG Energy, Inc</u>., Case No. 03-13024 (PCB) (Bankr. S.D.N.Y. 2003); <u>In re Allegiance Telecom, Inc.</u>, Case No. 03-13057 (RDD) (Bankr. S.D.N.Y. 2003); <u>In re UAL Corp.</u>, Case No. 02-B-48191 (ERW) (Bankr. N.D. Ill. 2002); <u>In re Conseco, Inc.</u>, Case No. 02-B-49672 (CAD) (Bankr. N.D. Ill. 2002); <u>In re Polymer Group, Inc.</u>, Case No. 02-05573-jw (Bankr. D. S.C. 2002); <u>In re Homelife Corporation</u>, Case No. 01-2412 (LHK) (Bankr. D. Del 2001); <u>In re Chiquita Brands International, Inc.</u>, Case No. 01-18812 (Bankr. S.D. Ohio 2001); <u>In re W.R. Grace & Co.</u>, Case No. 01-01139 (JKF) (Bankr. D. Del. 2001); <u>In re Trans World Airlines, Inc.</u>, Case No. 01-00056 (PJW) (Bankr. D. Del. 2001); <u>In re Teligent, Inc.</u>, Case No. 01-12974 (SMB) (Bankr. S.D.N.Y. 2001); <u>In re Quality Stores, Inc.</u>, Case No. 01-11068-jdg (W.D. Mich. 2001); <u>In re AmeriServe Food Distribution, Inc.</u>, Case No. 00-00358 (PJW) (Bankr. D. Del. 2000); <u>In re The Babcock & Wilcox Co.</u>, Case No. 00-10992 (Bankr. E.D. La. 2000); <u>In re United Artists Theatre Co.</u>, Case No. 00-3514 (PJW) (D. Del. 2000); <u>In re Harnischfeger Industries, Inc.</u>, Case No. 99-02171 (PJW) (Bankr. D. Del. 1999); <u>In re Zenith Elec. Corp.</u>, Case No. 99-02911 (MFW) (Bankr. D. Del. 1999), among others.

17. The Debtors believe that K&E is both well qualified and uniquely able to represent them in their chapter 11 cases in a most efficient and timely manner.

18. If the Debtors were required to retain attorneys other than K&E in connection with the prosecution of the chapter 11 cases, the Debtors, their estates, and all parties in interest would be unduly prejudiced by the time and expense necessarily attendant to such attorneys' familiarization with the intricacies of the Debtors and their business operations.

19. The employment of K&E under a general retainer is appropriate and necessary to enable the Debtors to execute faithfully their duties as debtors and debtors in possession and to implement the restructuring and reorganization of the Debtors.

## SERVICES TO BE PROVIDED

20. Subject to this Court's approval, the professional services that K&E will render to the Debtors may include, but shall not be limited to, the following:

(a) advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

(b) attend meetings and negotiate with representatives of creditors, the United States Trustee and other parties in interest;

(c) take all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, the defense of any action commenced against the Debtors and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved, including, but not limited to, objections to claims filed against the estates;

(d) prepare on the Debtors' behalf all motions, applications, answers, orders, reports and papers necessary to the administration of the estates;

(e) negotiate and prepare on behalf of the Debtors' chapter 11 plan or plans, disclosure statement and all related agreements and/or documents and take any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

(f) represent the Debtors in connection with obtaining debtor in possession financing;

(g) advise the Debtors in connection with any potential sale(s) of assets;

(h) appear before any court and protect the interests of the Debtors' estates before such courts;

(i) assist the Debtors regarding tax matters; and

(j) perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with these chapter 11 cases.

## K&E DOES NOT HOLD OR REPRESENT AND INTEREST ADVERSE TO THE DEBTORS' ESTATES AND IS DISINTERESTED

21. K&E has stated its desire and willingness to act in these cases and render the necessary professional services as attorneys for the Debtors. To the best of the Debtors' knowledge, the partners and associates of K&E do not have any connection with or any interest adverse to the Debtors, their creditors or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the affidavit of Robert G. Burns, a partner of K&E (the "Burns Affidavit"), annexed hereto as **Exhibit A**. As such, K&E is a "disinterested person," as that phrase is defined in section 101(14) of the Bankruptcy Code and as modified by section 1107(b) of the Bankruptcy Code, and K&E's employment is necessary and in the best interests of the Debtors and the Debtors' estates.

22. The Debtors have hundreds, if not thousands, of creditors or other parties in interest. As described more fully in the Burns Affidavit, K&E may represent or may have represented certain of such parties in matters unrelated to these chapter 11 cases.

23. If a conflict arises with respect to these creditors, other creditors or other parties in interest in the future, the Debtors will seek authorization to retain conflicts counsel to represent the Debtors in all matters in which K&E may have conflicts in its representation of the Debtors in these chapter 11 cases.

24. None of the representations described above and/or in the Burns Affidavit are materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders. Moreover, pursuant to section 327(c) of the Bankruptcy Code, K&E is not

9

disqualified from acting as the Debtors' attorneys merely because it represents creditors, equity security holders, and/or other parties in interest in unrelated matters.

25. K&E will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, K&E will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit as required by Bankruptcy Rule 2014(a).

## PROFESSIONAL COMPENSATION

26. K&E is not a creditor of the Debtors. Prior to the Commencement Date, K&E received from the Debtors an aggregate of $2,025,654.36[2] for professional services performed and to be performed and expenses incurred and to be incurred, including advance payments of $250,000.00 (the "Advance Payments") for professional services performed and to be performed and expenses incurred and to be incurred in connection with these chapter 11 cases. Other than the Advance Payments, all payments received by K&E from the Debtors have been made in the ordinary course of business of K&E, in the ordinary course of business of the Debtors, and consistent with prior dealings between the Debtors and K&E and/or the dealings between similarly situated parties. K&E has used the Advanced Payments to credit the Debtors' account with K&E's estimated charges for professional services performed and expenses incurred up to the time of the commencement of these chapter 11 cases and has reduced the balance of the credit available to the Debtors by the amount of such charges. As of the Commencement Date, K&E had a remaining credit balance in favor of the Debtors for future professional services to be performed, and expenses to be incurred, in the approximate amount of

---

[2] This number includes an estimated $50,000.00 disbursement received by K&E for professional services performed and expenses incurred for the prepetition portion of December 2004.

10

$250,000.00, subject to processing of all time and disbursements up to the commencement of these chapter 11 cases.[3]

27. The Debtors understand that K&E intends to apply for compensation for professional services rendered in connection with these chapter 11 cases, subject to approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York, guidelines established by the United States Trustee and Orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that K&E incurs. K&E will charge the Debtors hourly rates consistent with the rates it charges in bankruptcy and non-bankruptcy matters of this type.

28. K&E's hourly rates are set at a level designed to fairly compensate K&E for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned.

29. It is K&E's policy to charge its clients in all areas of practice for all expenses incurred in connection with a client's case. The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals" and telecopier charges. K&E will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to its other clients. K&E believes that it is more fair to charge these expenses to the particular client rather than increasing the hourly rates and spreading the expenses among all clients.

---

[3] The disclosures contained herein constitute K&E's statement of compensation paid or agreed to be paid for services rendered or to be rendered in contemplation of or in connection with the Debtors' chapter 11 cases, and the source of such compensation, in compliance with section 329(a) of the Bankruptcy Code.

30. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain K&E on any reasonable terms and conditions. The Debtors submit that the most reasonable terms and conditions are those charged by K&E to the Debtors and other clients on a daily basis in a competitive market for legal services.

31. Therefore, the Debtors and K&E have agreed that K&E shall be paid its customary hourly rates for services rendered that are in effect from time to time, as set forth in the Burns Affidavit, and shall be reimbursed according to K&E's customary reimbursement policies.

32. No prior application or motion for the relief requested herein has been made to this or any other court.

## MEMORANDUM OF LAW

33. This Application includes citations to the applicable authorities and a discussion of their relevance to this Application. Accordingly, the Debtors respectfully submit that such citations and discussion satisfy the requirement that the Debtors submit a separate memorandum of law in support of this Application pursuant to rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

34. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (a) the United States Trustee for the Southern District of New York; (b) the Debtors' four largest unsecured creditors on a consolidated basis, as identified in the Debtors' chapter 11 petitions and accompanying materials; (c) attorneys for the Noteholder Group; (d) attorneys for the Debtors' prepetition and postpetition senior secured lenders; and (e) the Debtors' indenture trustee. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  New York, New York  
       December 21, 2004

TRICO MARINE SERVICES, INC.  
TRICO MARINE ASSETS, INC.  
TRICO MARINE OPERATORS, INC.

By: /s/ Trevor Turbidy  
    Trevor Turbidy  
    Chief Financial Officer  
    Trico Marine Services, Inc.