# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ x

In re                                       :

                                            :         **Chapter 11 Case No.**

**TRICO MARINE SERVICES, INC., et al.,**       :         **04-_____ (___)**

                                            :

                         **Debtors.**        :         **(Jointly Administered)**

------------------------------------------------------------------------ x

## JOINT PREPACKAGED PLAN OF
## REORGANIZATION OF TRICO MARINE SERVICES, INC., TRICO MARINE ASSETS, INC., AND
## <u>TRICO MARINE OPERATORS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

KIRKLAND & ELLIS LLP
James H. M. Sprayregen, P.C.
Robert G. Burns
Lisa G. Laukitis
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

Attorneys for Trico Marine Services, Inc., Trico
Marine Assets, Inc. and Trico Marine Operators, Inc.

Dated:   New York, New York
           November 12, 2004

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 2

**Article I. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME** ....................... 1
    A.    Definitions ................................................................................................. 1
    B.    Scope of Definitions; Rules of Construction; Rules of Interpretation; Computation of Time .......... 9

**Article II. TREATMENT OF UNCLASSIFIED CLAIMS** ...................................................... **9**
    A.    Administrative Claims .............................................................................. 9
    B.    Priority Tax Claims ................................................................................ 10
    C.    Professional Fee Claims .......................................................................... 10

**Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** .................. **10**
    A.    Introduction ............................................................................................. 10
    B.    Summary of Classes ............................................................................... 11
    C.    Treatment of Classified Claims and Equity Interests ................................. 11
    D.    Allowed Claims and Equity Interests ....................................................... 13
    E.    Postpetition Interest ................................................................................ 13
    F.    Alternative Treatment ............................................................................. 13
    G.    Tax Allocation ....................................................................................... 14

**Article IV. MEANS FOR IMPLEMENTATION OF THIS PLAN** ........................................ **14**
    A.    Continued Corporate Existence ................................................................ 14
    B.    Restructuring Transactions ....................................................................... 14
    C.    Corporate Action; Cancellation of Securities ............................................ 14
    D.    Directors and Executive Officers ............................................................. 15
    E.    DIP Facility ............................................................................................ 15
    F.    New Securities ....................................................................................... 15
    G.    Exit Facility ........................................................................................... 16
    H.    Long Term Incentive Plan ....................................................................... 16
    I.    Revesting of Assets ................................................................................ 16
    J.    Preservation of Rights of Action; Settlement of Litigation Claims .............. 17
    K.    Exemption from Certain Transfer Taxes .................................................... 17

**Article V. PROVISIONS GOVERNING DISTRIBUTIONS** ............................................... **17**
    A.    Distributions for Claims and Equity Interests Allowed as of the Effective Date ............ 17
    B.    Disbursing Agent ................................................................................... 17
    C.    Surrender of Securities or Instruments ..................................................... 17
    D.    Instructions to Disbursing Agent .............................................................. 18
    E.    Services of Indenture Trustee ................................................................... 18
    F.    Record Date for Distributions ................................................................... 18
    G.    Means of Cash Payment .......................................................................... 18
    H.    Calculation of Distribution Amounts of New TMS Common Stock and New Warrants ........ 18
    I.    Delivery of Distributions; Undeliverable or Unclaimed Distributions ........... 18
    J.    Withholding and Reporting Requirements .................................................. 19
    K.    Setoffs ................................................................................................... 19

**Article VI. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS** ...... **19**
    A.    Objections to Claims; Disputed Claims .................................................... 19
    B.    No Distribution Pending Allowance .......................................................... 20
    C.    Distributions After Allowance .................................................................. 20

**Article VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...........................**20**
    A.     Assumed Contracts and Leases ................................................................. 20
    B.     Payments Related to Assumption of Contracts and Leases ..................... 20
    C.     Rejected Contracts and Leases .................................................................. 20
    D.     Claims Based on Rejection of Executory Contracts or Unexpired Leases ...... 21
    E.     Compensation and Benefit Plans and Treatment of Retirement Plan ....... 21

**Article VIII. ACCEPTANCE OR REJECTION OF THIS PLAN** ..............................................................**21**
    A.     Classes Entitled To Vote .......................................................................... 21
    B.     Acceptance by Impaired Classes ............................................................. 21
    C.     Elimination of Classes .............................................................................. 21
    D.     Nonconsensual Confirmation ................................................................... 21

**Article IX. CONDITIONS PRECEDENT TO THIS PLAN'S CONFIRMATION AND
EFFECTIVENESS** ....................................................................................................................**22**
    A.     Conditions to Confirmation ...................................................................... 22
    B.     Conditions to Effective Date .................................................................... 22
    C.     Effect of Failure of Conditions ................................................................ 22
    D.     Waiver of Conditions ............................................................................... 23

**Article X. MODIFICATIONS AND AMENDMENTS; WITHDRAWAL** ...................................................**23**

**Article XI. RETENTION OF JURISDICTION** .................................................................................**23**

**Article XII. COMPROMISES AND SETTLEMENTS** ........................................................................**24**

**Article XIII. MISCELLANEOUS PROVISIONS** ..............................................................................**24**
    A.     Bar Dates for Certain Claims ................................................................... 24
    B.     Payment of Statutory Fees ........................................................................ 25
    C.     Severability of Plan Provisions ................................................................ 25
    D.     Successors and Assigns ............................................................................. 25
    E.     INJUNCTION .......................................................................................... 25
    F.     DEBTORS' RELEASES ........................................................................... 26
    G.     OTHER RELEASES ................................................................................ 26
    H.     Exculpation and Limitation of Liability ................................................... 27
    I.     Binding Effect ........................................................................................... 27
    J.     Revocation, Withdrawal, or Non-Consummation ..................................... 27
    K.     Committees ............................................................................................... 27
    L.     Plan Supplement ....................................................................................... 27
    M.     Notices to Debtors .................................................................................... 28
    N.     Indemnification Obligations ..................................................................... 28
    O.     Governing Law ......................................................................................... 28
    P.     Prepayment ............................................................................................... 28
    Q.     Section 1125(e) of the Bankruptcy Code ................................................. 29

## INTRODUCTION

Trico Marine Services, Inc. ("TMS"), Trico Marine Assets, Inc. ("TMA") and Trico Marine Operators, Inc. ("TMO") jointly propose the following prepackaged plan of reorganization under Chapter 11 of the Bankruptcy Code.

## ARTICLE I.

## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.   Definitions**

The following terms used in the Plan shall have the respective meanings defined below:

1.      "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including (i) actual, necessary costs and expenses, incurred after the Commencement Date, of preserving the Debtors' Estates and operating their businesses, including wages, salaries, or commissions for services rendered after the Commencement Date, (ii) Professional Fee Claims, (iii) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, (iv) all Allowed Claims that are entitled to be treated as Administrative Claims by virtue of a Final Order entered under section 546(c)(2)(A) of the Bankruptcy Code, (v) the reasonable post-petition fees and expenses of the Indenture Trustee, including any successor thereto, including reasonable attorney's fees and expenses of such Indenture Trustee and (vi) any obligations under the DIP Facility.

2.      "Administrative Claims Bar Date" means the date, if any, designated by the Bankruptcy Court as the last date for filing proofs of Administrative Claims against the Debtors.

3.      "Affiliate" or "affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

4.      "Allowed" means, with reference to any Claim: (a) any Claim against any Debtor that is listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and for which no contrary proof of claim or objection to claim has been timely filed; (b) any Claim allowed hereunder; (c) any Claim, or portion thereof, which is not Disputed; (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court or under the Plan; or (e) any Claim which, if Disputed, has been Allowed by Final Order or ceased to be Disputed; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered an Allowed Claim hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, an Allowed Administrative Claim or Allowed Claim shall not, for any purpose under the Plan, include interest on such Administrative Claim or Claim from and after the Commencement Date.

5.      "Allowed Claim" means any Claim that has been Allowed.

6.      "Allowed Equity Interest" means an Equity Interest in TMS, which has been or hereafter is listed by TMS in its books and records as liquidated in an amount and not disputed or contingent; provided, however, that to the extent an Equity Interest is a Disputed Equity Interest, the determination of whether such Equity Interest will be Allowed and/or the amount of any such Equity Interest will be determined, resolved, or adjudicated, as the case may be, in the manner in which such Equity Interest would have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced; provided, further, that the Reorganized Debtors may in their discretion, bring an objection or other motion before the Bankruptcy Court with respect to resolution of a Disputed Equity Interest.

7.      "Ballots" means each of the ballot forms (including Master Ballots) distributed with the Disclosure Statement to Holders of Eligible Claims.

8.      "Bankruptcy Code" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1

9.     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or any other court with jurisdiction over the Chapter 11 Cases.

10.     "Bankruptcy Rules" means collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended.

11.     "Bear Stearns" means Bear Stearns Corporate Lending Inc., the collateral and administrative agent under the Credit Agreement, the DIP Facility and the Exit Facility.

12.     "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in the City of New York.

13.     "Cash" means legal tender of the United States of America.

14.     "Cause of Action" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases, including through the Effective Date.

15.     "Certificate" means any certificate, instrument, or other document evidencing an Extinguished Security.

16.     "Chapter 11 Cases" means the jointly administered Chapter 11 cases of the Debtors.

17.     "Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor, including, but not limited to (a) any right to payment from a Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

18.     "Class" means one of the classes of Claims or Equity Interests described in the Plan.

19.     "Commencement Date" means the date on which the Debtors file their petitions for relief commencing the Chapter 11 Cases.

20.     "Commitment Letter" means that letter by and between TMS, TMA, TMO, Bear Stearns and the DIP Lenders setting forth the general terms and conditions of the DIP Facility and the Exit Facility.

21.     "Committee" means any official committee appointed in the Chapter 11 Cases, as such committee may be reconstituted from time to time.

22.     "Confirmation" means the Bankruptcy Court's confirmation of the Plan.

23.     "Confirmation Date" means the date of entry of the Confirmation Order on the docket of the Bankruptcy Court.

24.     "Confirmation Hearing" means the Bankruptcy Court's hearing to consider Confirmation of the Plan, as it may be adjourned or continued from time to time.

25.     "Confirmation Order" means the Bankruptcy Court's order confirming the Plan under section 1129 of the Bankruptcy Code.

26.    "Credit Agreement" means that certain Credit Agreement, dated as of February 12, 2004 among Trico Marine Assets, Inc. and Trico Marine Operators, Inc., the several banks and other financial institutions from time to time parties thereto, and Bear Stearns, as administrative agent, and all related guaranty, security, and other documents executed in connection therewith.

27.    "Credit Agreement Claim" means a claim arising under the Credit Agreement.

28.    "Cure" means the payment of Cash by a Debtor, or the Distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure a default by a Debtor under an executory contract or unexpired lease of a Debtor and to permit a Debtor to assume that contract or lease under section 365(a) of the Bankruptcy Code.

29.    "Debtor" means each of TMS, TMA and TMO on and after the Commencement Date and "Debtors" means all of them collectively, and when the context so requires, in their capacity as debtors and debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

30.    "DIP Agent" means Bear Stearns Corporate Lending, Inc. as administrative agent for the DIP Lenders.

31.    "DIP Credit Agreement" means the credit agreement with respect to the DIP Facility.

32.    "DIP Credit Documents" means the DIP Credit Agreement and related guaranty, security and other documents in form and substance satisfactory to the DIP Lenders and the DIP Agent.

33.    "DIP Effective Date" means the date upon which all conditions precedent to the effectiveness of the DIP Credit Documents are satisfied or waived in writing by the DIP Lenders.

34.    "DIP Facility" means that certain term loan and revolving credit facility, as described in the Commitment Letter.

35.    "DIP Lenders" means the lenders under the DIP Credit Documents.

36.    "DIP Term Loan" means the non-amortizing term loan made available to TMA and TMO under the DIP Facility pursuant to the terms and conditions set forth in the Commitment Letter.

37.    "Disallowed Claim" means any Claim against any Debtor that has been disallowed, in whole or in part, by Final Order of the Bankruptcy Court, or that has been withdrawn, in whole or in part, by the Holder thereof.

38.    "Disallowed Equity Interest" means any Equity Interest in any Debtor that has been disallowed, in whole or in part, by Final Order of the Bankruptcy Court, or that has been withdrawn, in whole or in part, by the Holder thereof.

39.    "Disbursing Agent" means the Reorganized Debtors or any party designated by the Reorganized Debtors, in their sole discretion, and approved by the Bankruptcy Court if other than a Debtor, to serve as a disbursing agent under the Plan.

40.    "Disclosure Statement" means the disclosure statement relating to the Plan, as amended, supplemented or modified from time to time, describing the Plan, that is distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code and Bankruptcy Rule 3018 and/or other applicable law.

41.    "Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest to which the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been settled, waived, withdrawn or determined by a Final Order.  A Claim that is Disputed by the Debtors as to its amount only shall be deemed Allowed in the amount the Debtors admit owing, if any, and Disputed as to the excess.

42.     "Disputed Claim Reserve" means the reserve established and maintained by the Reorganized Debtors on account of Disputed Claims.

43.     "Distribution" means any distribution made under the Plan to the Holders of Allowed Claims or Allowed Equity Interests.

44.     "Distribution Date" means the date, occurring as soon as practicable after the Effective Date, on which the Disbursing Agent first makes Distributions to Holders of Allowed Claims and Allowed Equity Interests, if any, as provided in the Plan.

45.     "Effective Date" means the first Business Day (i) on which all conditions to the Plan's consummation set forth in Article IX.B. have been satisfied or waived and (ii) that is the date on which the Plan is substantially consummated.

46.     "Eligible Claims" means the Senior Note Claims, Holders of which are entitled to vote under Article VIII of the Plan and section 1126 of the Bankruptcy Code to accept or reject the Plan.

47.     "Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

48.     "Equity Interests" means, collectively, TMS Common Stock Interests and TMS Other Equity Interests.

49.     "Estate" means the estate of any of the Debtors in the Chapter 11 Cases, and "Estates" means, collectively, the estates of all of the Debtors in the Chapter 11 Cases, as created under section 541 of the Bankruptcy Code.

50.     "Exchange Act" means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

51.     "Exit Agent" means Bear Stearns Corporate Lending, Inc., as administrative agent for the Exit Lenders.

52.     "Exit Credit Agreement" means the credit agreement with respect to the Exit Facility.

53.     "Exit Credit Documents" means the Exit Credit Agreement and related guaranty, security and other documents in form and substance satisfactory to the Exit Lenders and the Exit Agent.

54.     "Exit Facility" means that certain term loan and revolving credit facility substantially in the form attached to the DIP Facility and described in the Commitment Letter.

55.     "Exit Lenders" means the Lenders under the Exit Credit Documents.

56.     "Extinguished Securities" means all Equity Interests and Senior Notes.

57.     "Face Amount" means when used in reference to (i) a Disputed Claim, the full stated amount claimed by the Holder thereof in any proof of Claim timely filed with the Bankruptcy Court, (ii) an Allowed Claim, the Allowed amount thereof, and (iii) an Equity Interest, the number of shares evidencing such Equity Interests.

58.     "Final Order" means (a) an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for *certiorari*, or other proceedings for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or (b) in the event that an appeal, petition for *certiorari*, or motion for reargument or rehearing has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed or from which reargument or rehearing was sought, or *certiorari* has been denied, and the time to take any further appeal, petition for *certiorari* or other proceedings for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Rule 7024 of the Bankruptcy Rules may be filed with respect to such order.

59.    "Financial Projections" means the projected financial information attached to the Disclosure Statement as Exhibit C which project the financial performance of the Reorganized Debtors through December 31, 2004 and is based upon information available as of September 30, 2004.

60.    "Holder" and, collectively, "Holders" means a Person or Entity legally or beneficially, as applicable, holding a Claim or Equity Interest.

61.    "Impaired" means when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

62.    "Impaired Claim" means a Claim classified in an Impaired Class.

63.    "Impaired Class" means each of Classes 6, 7, 8 and 9 as set forth in Article III of the Plan.

64.    "Indenture" means that certain Indenture, dated as of May 31, 2002, by and between TMS and the Indenture Trustee.

65.    "Indenture Trustee" means JPMorgan Chase Bank, as Indenture Trustee for the Senior Notes.

66.    "Interim Order" means the entry of an interim order of the Bankruptcy Court, in form and substance satisfactory to the DIP Lenders approving the DIP Facility, the DIP Credit Documents and the transaction contemplated thereby.

67.    "Interim Period" means the period from the entry of the Interim Order through the entry of the Final Order

68.    "Lien" means any lien, lease, right of first refusal, servitude, claim, pledge, option, charge, hypothecation, easement, security interest, right-of-way, encroachment, mortgage, deed of trust, and/or any other encumbrance, restriction or limitation whatsoever.

69.    "Long Term Incentive Plan" means the Long Term Incentive Plan to be adopted by the Reorganized Debtors on the Effective Date pursuant to the Plan, pursuant to which the New Options will be issued.

70.    "Majority DIP Lenders" means, as of any date of determination, DIP Lenders whose aggregate commitments represent greater than 50% of the commitments under the DIP Facility.

71.    "MARAD Notes" means those certain notes issued by Trico Marine Services International, Inc. in the aggregate amount of $28.9 million and guaranteed by TMS and the United States Maritime Administration.

72.    "Master Ballot" means each of the ballot forms distributed with the Disclosure Statement to a Nominee.

73.    "New Options" means the options to be issued by Reorganized TMS to purchase New TMS Common Stock pursuant to the provisions of the Long Term Incentive Plan.

74.    "New Securities" means, collectively, the New TMS Common Stock, the New Warrants and/or the New Options, as applicable.

75.    "New TMS Common Stock" means all of the new common stock, par value $0.01 per share, authorized by the Plan to be issued by Reorganized TMS following the Effective Date.

76.    "New Warrants" means the warrants to purchase New TMS Common Stock to be issued by Reorganized TMS pursuant to the Plan.

77.    "Nominee" means a bank, brokerage firm or other nominee holding Eligible Claims in its own name on behalf of a beneficial owner, or any agent thereof.

78.    "Noteholder Group" means those Holders of Senior Notes, or their successors, which executed the Plan Support Agreement.

79.    "Other Priority Claim" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

80.    "Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

81.    "Plan" means this chapter 11 plan of reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

82.    "Plan Supplement"  means the compilation of documents, including but not limited to, Reorganized TMS's Bylaws, Reorganized TMS's Certificate of Incorporation, the Registration Rights Agreement, the Warrant Agreement, the Long Term Incentive Plan, the Key Emp loyee Options Agreement, the Executive Options Agreement, the Director Option Agreement, the Employment Agreements, the Retirement Agreement, the Commitment Letter, the Plan Support Agreement, any exhibits to the Plan not included herewith, and filed with the Securities and Exchange Commission contemporaneously with the commencement of solicitation hereof, and as finalized and filed with the Bankruptcy Court on or before the date that is five (5) Business Days prior to the Confirmation Hearing.

83.    "Plan Support Agreement" means the Plan Support Agreement, dated as of September 8, 2004, among TMS, TMA and TMO and the other parties thereto in the form included in the Plan Supplement.

84.    "Postpetition Interest" means interest, accruing after the Commencement Date, on a Claim.

85.    "Priority Tax Claim" means any Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

86.    "Professional" means a professional Person, as that term is used in sections 327 and 1103 of the Bankruptcy Code.

87.    "Professional Fee Claim" means a Professional's Claim for compensation or reimbursement of costs and expenses relating to services performed on and after the Commencement Date and before and including the Confirmation Date.

88.    "Pro Rata" means at any time, the proportion that the Face Amount of an Allowed Claim or Allowed Equity Interest in a particular Class bears to the aggregate Face Amount of all Claims or Equity Interests (including Disputed Claims or Disputed Equity Interests, but excluding Disallowed Claims or Disallowed Equity Interests) in that Class, unless the Plan provides otherwise.

89.    "Record Date" means, for purposes of receiving a Distribution under the Plan, the date that is second Business Day after the Confirmation Date.

90.    "Registration Rights Agreement" means the agreement between Reorganized TMS and certain holders of New TMS Common Stock which will govern the registration rights of the New TMS Common Stock in the form filed with the Plan Supplement on the date of the commencement of solicitation of acceptances of this Plan.

91.    "Reorganized Debtor" means each of Reorganized TMS, Reorganized TMA and Reorganized TMO, and "Reorganized Debtors" means all of them collectively.

92.    "Reorganized Debtors' Bylaws" means Reorganized Debtors' bylaws in effect under the laws of the applicable State of incorporation, as amended by the Plan and in the form filed with the Plan Supplement on the date of the commencement of solicitation of acceptances of this Plan.

93.    "Reorganized Debtors' Certificate of Incorporation" means Reorganized Debtors' certificate of incorporation in effect under the laws of the applicable State of incorporation, as amended by the Plan and in the form filed with the Plan Supplement on the date of the commencement of solicitation of acceptances of this Plan.

94.     "Reorganized TMA" means TMA, on and after the Effective Date.

95.     "Reorganized TMO" means TMO, on and after the Effective Date.

96.     "Reorganized TMS" means TMS, on and after the Effective Date.

97.     "Required Exit Lenders" means, as of any date of determination, Exit Lenders whose aggregate commitments represent greater than 70% of the commitments under the Exit Facility.

98.     "Requisite Acceptances" means with respect to each Impaired Class of Claims, acceptance of the Plan by (i) Holders of at least two-thirds in amount of Allowed Claims in such Impaired Class of Claims actually voting and (ii) the Holders of more than one-half in number of Allowed Claims in such Impaired Class of Claims actually voting, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

99.     "Restructuring" means collectively, the transactions and transfers described in Article IV of the Plan.

100.    "Schedules" means the schedules of assets and liabilities, statements of financial affairs, and lists of Holders of Claims and Equity Interests filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any amendments and supplements thereto.

101.    "Securities Act" means the Securities Act of 1933, as now in effect or hereafter amended.

102.    "Secured Claim" means a Claim that is secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by a Debtor or Reorganized Debtor and the Holder of such Claim.

103.    "Securities Litigation Claims" means any Claim against any of the Debtors, whether or not the subject of an existing lawsuit, arising from recission of a purchase or sale of shares, notes, interests, partnership interests, or any other security of the Debtors or an Affiliate of any of the Debtors, for damages arising from the purchase or sale of any such security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of any such Claim, including claims based on allegations that the Debtors made false and misleading statements and engaged in other deceptive acts in connection with the sale of securities.

104.    "Senior Secured Debt" means all obligations arising under the Credit Agreement.

105.    "Senior Secured Lenders" means the Holders of Claims under the Credit Agreement.

106.    "Senior Notes" means the 8 7/8% senior unsecured notes due 2012 of TMS in the aggregate principal amount of $250 million issued under the Indenture.

107.    "Senior Note Claim" means any Claim against any of the Debtors arising under the Senior Notes, the Indenture or any ancillary agreement.

108.    "Solicitation" means the solicitation by the Debtors from Holders of Eligible Claims or Equity Interests of acceptances of the Plan pursuant to section 1126(b) of the Bankruptcy Code.

109.    "Solicitation Agent" means Kurtzman Carson Consultants LLC.

110.    "Solicitation Package" means the package provided by TMS, TMA and TMO that includes the Plan, the Disclosure Statement and related materials and, where appropriate, Ballots.

111. "Subordinated Claim" means any Securities Litigation Claim or any other Claim arising from rescission of a purchase or sale of a security of any of the Debtors or an Affiliate of any of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim that is determined to be subordinated to other Claims pursuant to section 510(b) of the Bankruptcy Code.

112. "Term Sheet" means the term sheet, dated as of September 8, 2004, attached as Exhibit A to the Plan Support Agreement.

113. "TMA" means Trico Marine Assets, Inc., a Delaware corporation.

114. "TMI" means Trico Marine International, Inc.

115. "TMIH" means Trico Marine International Holdings B.V.

116. "TMO" means Trico Marine Operators, Inc., a Louisiana corporation.

117. "TMS" means Trico Marine Services, Inc., a Delaware corporation.

118. "TMS Common Stock" means TMS's common stock, par value $.01 per share, issued and outstanding immediately before the Commencement Date.

119. "TMS Common Stock Interest" means all of the TMS Common Stock.

120. "TMS Guaranty Claims" means the guaranties of TMS under the MARAD Notes.

121. "TMS Other Equity Interests" means collectively, (i) all of TMS's preferred stock, par value $.01 per share, issued and outstanding immediately before the Commencement Date, (ii) (a) all other incentive stock options, non-qualified stock options, and stock appreciation rights granted under any Debtor-sponsored stock option plans or (b) any other options, warrants, or rights, contractual or otherwise, if any, to acquire or receive an Equity Interest (including, without limitation, all of TMS's Preferred Stock Purchase Rights) existing immediately before the Commencement Date, and (iii) any Claim against the Debtors, or Equity Interest in the Debtors, under applicable federal or state law, whether or not such Claim is listed on the Schedules or evidenced by a filed proof of Claim, whether or not the subject of an existing lawsuit, arising from or seeking the rescission of a purchase or sale of any security of the Debtors or any Affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement, indemnification or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim as provided in section 510(b) of the Bankruptcy Code.

122. "TMS Subsidiary Debtor Stock" means all of the authorized, issued and outstanding shares of TMA and TMO.

123. "Trico Supply" means Trico Supply ASA.

124. "Unimpaired" means, with respect to a Claim (or Class of Claims) or Equity Interest (or Class of Equity Interests), a Claim (or Class of Claims) or Equity Interest (or Class of Equity Interests) that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

125. "Unimpaired Class" means each of Classes 1, 2, 3, 4 and 5 as set forth in Article III of the Plan.

126. "Unsecured Claim" means an unsecured Claim, other than a Senior Note Claim, that is not entitled to priority under section 507 of the Bankruptcy Code.

127. "Voting Deadline" means 5:00 p.m., New York City time on December 13, 2004, unless extended or terminated early by the Debtors pursuant to the procedures outlined in the Disclosure Statement, in their sole discretion; the date and time in which the Ballots must be received by the Solicitation Agent; the Debtors may extend the Voting Deadline, by oral or written notice to the Solicitation Agent, until the Requisite Acceptances are received.

128.    "Voting Record Date" means November 5, 2004; the date for the determination of Holders of record of Eligible Claims entitled to receive the Solicitation Package and vote on the Plan.

129.    "Warrant Agreement" means the agreement between TMS and Mellon Investor Services, L.L.C., as warrant agent, which will be substantially in the form set forth in the Plan Supplement on the date of the commencement of solicitation of acceptances of this Plan.

**B.   Scope of Definitions; Rules of Construction; Rules of Interpretation; Computation of Time**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, schedule, or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to this Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used in this Plan that is not defined in this Plan shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  Unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions.  Any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan.  Any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's legal successors and assigns.

This Plan is the product of extensive discussions and arm's-length negotiations between and among the Debtors and the Noteholder Group.  Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the other relevant and necessary documents ancillary thereto, as applicable.  To the extent that the provisions of this Plan conflict or are inconsistent with the provisions set forth in the Plan Supplement or any other document, including but not limited to, the DIP Credit Documents or the Exit Credit Documents, the terms of such document, as applicable, shall govern.

**ARTICLE II.**

**TREATMENT OF UNCLASSIFIED CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

**A.   Administrative Claims**

Each Holder of an Allowed Administrative Claim shall receive, on the latest of (i) the Distribution Date, (ii) the date on which its Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date on which its Administrative Claim becomes payable under any agreement relating thereto, Cash equal to the unpaid portion of its Allowed Administrative Claim.  Notwithstanding the foregoing, (a) any Allowed Administrative Claim based on a liability incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases, including but not limited to the reasonable fees and expenses incurred after the Commencement Date by the Indenture Trustee, including reasonable attorney's fees and expenses of such Indenture Trustee, shall be paid by the Debtors or the Reorganized Debtors as Administrative Claims in the ordinary course of the Debtors' businesses, in accordance with the terms and conditions of any agreement relating thereto, without application by or on behalf of any such parties to the Bankruptcy Court, and without notice and a hearing, unless specifically required by the Bankruptcy Court and (b) any Allowed Administrative Claim may be paid on such other terms as may be agreed on between the Holder of such Claim and the Debtors.

**B.   Priority Tax Claims**

On the later of (i) the Distribution Date or (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, in the sole discretion of the Debtors, (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (b) deferred Cash payments over a period not exceeding six years after the date of assessment of such Allowed Priority Tax Claim, of a value, as of the Effective Date, equal to such Allowed Priority Tax Claim, or (c) such other treatment as to which the Debtors and such Holder shall have agreed upon in writing; provided, however, that the Debtors reserve the right to prepay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Distribution Date without premium or penalty; provided, further, that no Holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising after the Commencement Date with respect to or in connection with such Allowed Priority Tax Claim.

**C.   Professional Fee Claims**

The Holders of Professional Fee Claims shall file their respective final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date by no later than the date that is sixty (60) days after the Effective Date, or such other date that may be fixed by the Bankruptcy Court.  If granted by the Bankruptcy Court, such award shall be paid in full in such amount as is Allowed by the Bankruptcy Court either (a) on the date such Professional Fee Claim becomes an Allowed Professional Fee Claim, or as soon as practicable thereafter, or (b) upon such other terms as may be mutually agreed upon between such Holder of an Allowed Professional Fee Claim and the Debtors.   Requests for compensation under section 503(b) of the Bankruptcy Code must be filed with the Bankruptcy Court and served on the Debtors, any Committee appointed in the Chapter 11 Cases, and other parties in interest by the Administrative Claims Bar Date.  Notwithstanding the foregoing, the (i) reasonable fees and expenses incurred after the Commencement Date by Bingham McCutchen LLP, as counsel to the Noteholder Group, and (ii) the fees and expenses incurred by Houlihan Lokey Howard & Zukin Capital, Inc., as financial advisors to the Noteholder Group, in accordance with the letter agreement dated May 5, 2004 between TMS and Houlihan Lokey Howard & Zukin Capital, Inc., shall both be paid by the Debtors or the Reorganized Debtors as Administrative Claims in the ordinary course of the Debtors' businesses, without application by or on behalf of any such parties to the Bankruptcy Court, and without notice and a hearing, unless specifically required by the Bankruptcy Court.  If the Debtors or the Reorganized Debtors and any such professional cannot agree on the amount of fees and expenses to be paid to such party, the amount of fees and expenses shall be determined by the Bankruptcy Court.  The payment of the Bingham McCutchen LLP and Houlihan Lokey Howard & Zukin Capital, Inc. fees and expenses under this Section are part of the overall settlement embodied by this Plan among the Holders of the Senior Note Claims and the Debtors.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.   Introduction**

This Plan places all Claims and Equity Interests, except unclassified Claims provided for in Article II, in the Classes listed below. A Claim or Equity Interest is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in any other Class to the extent that any portion thereof falls within the description of such other Class.

## B.  Summary of Classes

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Credit Agreement Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Secured Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 5 | TMS Guaranty Claims | Unimpaired | No (deemed to accept) |
| Class 6 | Senior Note Claims | Impaired | Yes |
| Class 7 | TMS Common Stock Interests | Impaired | No (deemed to reject) |
| Class 8 | TMS Other Equity Interests | Impaired | No (deemed to reject) |
| Class 9 | Subordinated Claims | Impaired | No (deemed to reject) |

## C.  Treatment of Classified Claims and Equity Interests

1. **Class 1 - Priority Claims**

a. <u>Claims in Class</u>:  Priority Claims are Claims that are accorded priority in right of payment under section 507(a) of the Bankruptcy Code (other than Allowed Administrative Claims and Allowed Priority Tax Claims).  Such Claims include Claims for (a) accrued employee compensation earned within ninety (90) days prior to commencement of the Chapter 11 Cases to the extent of $4,925 per employee and (b) contributions to employee benefit plans arising from services rendered within 180 days prior to the Commencement Date, but only for each such plan to the extent of (i) the number of employees covered by such plan multiplied by $4,925, less (ii) the aggregate amount paid to such employees from the Estates for wages, salaries or commissions during the ninety (90) days prior to the Commencement Date.

b. <u>Treatment</u>:  On the later of (i) the Distribution Date or (ii) the date on which its Priority Claim becomes an Allowed Priority Claim, or, in each case, as soon as practicable thereafter, each Holder of an Allowed Priority Claim against the Debtors shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Claim, Cash equal to the full amount of its Allowed Priority Claim.

c. <u>Voting</u>:  Class 1 is Unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Priority Claim in Class 1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

2. **Class 2 - Credit Agreement Claims**

a. <u>Claims in Class</u>:  Class 2 consists of all Allowed Credit Agreement Claims, to the extent not paid in full from the proceeds of the DIP Facility.

b. <u>Treatment</u>:  To the extent that Allowed Credit Agreement Claims are not satisfied in full pursuant to the DIP Facility, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Credit Agreement Claim shall receive Cash in an amount equal to one hundred percent (100%) of such Holder's remaining Allowed Credit Agreement Claim.  The Credit Agreement Claims in the principal amount of $55 million, plus any and all accrued and unpaid Postpetition Interest arising on or before the Effective Date thereon, shall be deemed Allowed under this Plan.

c. <u>Voting</u>:  Class 2 is Unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Credit Agreement Claim in Class 2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

3.  **Class 3 - Secured Claims**

a.  <u>Claims in Class</u>:  Class 3 consists of all Allowed Secured Claims, other than Claims in Class 2.

b.  <u>Treatment</u>:  On the later of (i) the Effective Date, (ii) the date on which a  Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as practicable, or (iii) such other date as may be ordered by the Bankruptcy Court, or, in each case, as soon as practicable thereafter, each Allowed Secured Claim shall be, at the election of the Debtors (i) reinstated, (ii) paid in Cash, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Secured Claim together with accrued post-Commencement Date interest, (iii) satisfied by the Debtors' surrender of the collateral securing such Allowed Secured Claim, (iv) offset against, and to the extent of, the Debtors' claims against the Holder of such Allowed Secured Claim, or (v) otherwise rendered Unimpaired, except to the extent that the Debtors and a Holder of an Allowed Secured Claim agree to a different treatment.

c.  <u>Voting</u>:  Class 3 is Unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Secured Claim in Class 3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.  **Class 4 - Unsecured Claims**

a.  <u>Claims in Class</u>:  Class 4 consists of all Allowed Unsecured Claims, other than Claims in Class 5 and Class 6.

b.  <u>Treatment</u>:  On the later of (i) the Effective Date or (ii) the date on which a Unsecured Claim becomes an Allowed Unsecured Claim, or, in each case as soon as practicable thereafter, each Holder of an Allowed Unsecured Claim shall receive Cash in an amount equal to one hundred percent (100%) of such Holder's Allowed Unsecured Claim.

c.  <u>Voting</u>:  Class 4 is Unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Unsecured Claim in Class 4 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.  **Class 5 - TMS Guaranty Claims**

a.  <u>Claims in Class</u>:  Class 5 consists of all TMS Guaranty Claims.

b.  <u>Treatment</u>:  On the Effective Date, or as soon as practicable thereafter, each Holder of a TMS Guaranty Claim shall have its Claim reinstated in full.

c.  <u>Voting</u>:  Class 5 is Unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed TMS Guaranty Claim in Class 5 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

6.  **Class 6 - Senior Note Claims**

a.  <u>Claims in Class</u>:  Class 6 consists of all Allowed Senior Note Claims.  On the Effective Date, the Senior Note Claims shall be deemed Allowed in the aggregate amount of $250 million of principal and accrued and unpaid interest through the Commencement Date.

b.  <u>Treatment</u>:  On the Effective Date or as soon as practicable thereafter, Holders of Allowed Senior Note Claims shall receive their Pro Rata share of one-hundred percent (100%) of the New TMS Common Stock, subject to dilution by the New Options to be granted pursuant to the Long Term Incentive Plan and the New Warrants.

c.  <u>Voting</u>:  Class 6 is Impaired by the Plan.  Each Holder of an Allowed Senior Note Claim in Class 6 is entitled to vote to accept or reject the Plan.

7.  **Class 7 - TMS Common Stock Interests**

a. <u>Equity Interests in Class</u>:  Class 7 consists of all TMS Common Stock Interests.

b. <u>Treatment</u>:  If the Holders of Claims in Class 6 vote as a Class to accept the Plan, on the Effective Date or as soon as practicable thereafter, Holders of Allowed TMS Common Stock Interests will receive their Pro Rata share of the New Warrants.  If the Holders of Claims in Class 6 vote as a Class to reject the Plan, Holders of Allowed TMS Common Stock Interests shall receive no Distribution under the Plan.

c. <u>Voting</u>:  Class 7 is Impaired by the Plan.  Because under section 507 of the Bankruptcy Code, the Holders of Claims in Class 7 would not be entitled to receive any Distributions and are only receiving a Distribution, if any, pursuant to the terms of the Plan Support Agreement negotiated between the Debtors and the Noteholder Group, the Debtors assert that each Holder of an Allowed TMS Common Stock Interest in Class 7 are deemed to reject the Plan.  Holders of TMS Common Stock Interests are not entitled to vote to accept or reject the Plan.

8. **Class 8 - TMS Other Equity Interests**

a. <u>Equity Interests in Class</u>:  Class 8 consists of all TMS Other Equity Interests.

b. <u>Treatment</u>:  On the Effective Date, all TMS Other Equity Interests shall be cancelled, and the Holders of TMS Other Equity Interests in TMS shall not receive or retain any property or interest in property on account of their TMS Other Equity Interests.

c. <u>Voting</u>:  Holders of TMS Other Equity Interests shall receive no Distribution under the Plan.  Therefore, each Holder of a TMS Other Equity Interest in Class 8 is conclusively presumed to have rejected the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, Holders of TMS Other Equity Interests are not entitled to vote to accept or reject the Plan.

9. **Class 9 - Subordinated Claims**

a. <u>Claims in Class</u>:  Class 9 consists of all Subordinated Claims.

b. <u>Treatment</u>:  Holders of Subordinated Claims shall not be entitled to and shall not retain, any property or interest in property on account of such Subordinated Claims .

c. <u>Voting</u>:  Class 9 is Impaired by the Plan.  Therefore, each Holder of a Subordinated Claim in Class 9 is conclusively presumed to have rejected the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, Holders of Subordinated Claims are not entitled to vote to accept or reject the Plan..

**D.    Allowed Claims and Equity Interests**

Notwithstanding any provision herein to the contrary, the Debtors or Reorganized Debtors shall only make Distributions to Holders of Allowed Claims and Allowed Equity Interests.  No Holder of a Disputed Claim or Disputed Equity Interest shall receive any Distribution on account thereof until and to the extent that its Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Allowed Equity Interest.

**E.    Postpetition Interest**

In accordance with section 502(b)(2) of the Bankruptcy Code, the amount of all prepetition Unsecured Claims against the Debtors shall be calculated as of the Commencement Date.  Except as otherwise explicitly provided in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order, no Ho lder of a prepetition Claim shall be entitled to or receive Postpetition Interest.

**F.    Alternative Treatment**

Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled hereunder, any other Distribution or treatment to which it, the Debtors, the Majority DIP Lenders and each member of the Noteholder Group may agree to in writing; <u>provided,</u>

<u>however</u>, that such other Distribution or treatment shall not provide a return having a present value in excess of the present value of the Distribution or treatment that otherwise would be given such Holder pursuant to this Plan.

## G.  Tax Allocation

For tax purposes, the value of any New TMS Common Stock received by Holders of Claims in satisfaction of interest bearing obligations shall be allocated first to the full satisfaction of principal of such interest bearing obligations and second in satisfaction of any accrued unpaid interest.

**ARTICLE IV.**

**MEANS FOR IMPLEMENTATION OF THIS PLAN**

## A.  Continued Corporate Existence

The Reorganized Debtors shall continue to exist after the Effective Date as separate corporate Entities in accordance with the applicable law in the applicable jurisdiction in which they are incorporated under their respective certificates of incorporation and bylaws in effect before the Effective Date except as their certificates of incorporation and bylaws may be amended pursuant to this Plan. On the Effective Date, without any further corporate action, the certificate of incorporation and bylaws of each Reorganized Debtor shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and as otherwise satisfactory to the Noteholder Group and shall include pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities.  The certificate of incorporation and by-laws of Reorganized TMS shall be substantially in the form filed with the Plan Supplement on the date of the commencement of solicitation of acceptances of this Plan.

## B.  Restructuring Transactions

On the Effective Date, and pursuant to the Plan or the applicable Plan Supplement documents, the applicable Debtors or Reorganized Debtors shall enter into the Restructuring transactions contemplated herein, and shall take any actions as may be necessary or appropriate to effect a Restructuring of their respective businesses or the overall organizational structure of the Reorganized Debtors.  The Restructuring transactions may include one or more mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations as may be determined by the Debtors or the Reorganized Debtors to be necessary or appropriate.  The actions to effect the Restructuring transactions may include: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Restructuring transactions. The chairman of the board of directors, president, chief executive officer, chief financial officer, any executive vice-president or senior vice-president, or any other appropriate officer of each Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of this Plan.  The secretary or assistant secretary of the appropriate Debtor shall be authorized to certify or attest to any of the foregoing actions.

## C.  Corporate Action; Cancellation of Securities

As of the Effective Date, the Certificates evidencing the Extinguished Securities shall evidence solely the right to receive from the Debtors the Distribution of the consideration, if any, set forth in Article III.C.  On the Effective Date, except as otherwise provided for herein, (i) the Extinguished Securities, to the extent not already cancelled, shall be deemed cancelled and of no further force or effect without any further action on the part of the Bankruptcy Court or any other Person and (ii) the obligations of the Debtors under the Extinguished Securities and under the Debtors' certificates of incorporation, any agreements, indentures, or certificates of designations governing the Extinguished

Securities shall be terminated and discharged; provided, however, that each indenture or other agreement that governs the rights of the Holder of a Claim based on the Extinguished Securities and that is administered by an indenture trustee, agent, or servicer shall continue in effect solely for the purposes of (a) allowing such indenture trustee, agent, or servicer to make the Distributions to be made on account of such Claims hereunder and (b) permitting such indenture trustee, agent, or servicer to maintain any rights it may have for fees, costs, and expenses under such indenture or other agreement. Additionally, the cancellation of any indenture shall not impair the rights and duties under such indenture as between the indenture trustee thereunder and the beneficiaries of the trust created thereby. Additionally, as of the Effective Date, all TMS Other Equity Interests (other than the Equity Interests held by TMS in TMA and TMO), to the extent not already cancelled, shall be cancelled. The TMS Subsidiary Debtor Stock shall not be cancelled, but shall be reinstated and shall vest in Reorganized TMS as of the Effective Date.

Any actions taken by an indenture trustee, agent or servicer that are not for the purposes authorized hereunder shall not be binding upon the Debtors. Except with respect to the making of Distributions as provided in the preceding paragraph, the Reorganized Debtors may, with or without cause, terminate any indenture or other governing agreement and the authority of any indenture trustee, agent or servicer to act thereunder at any time by giving five Business Days' written notice of termination to the indenture trustee, agent, or servicer. If Distributions hereunder on account of Senior Note Claims have not been completed at the time of termination of the Indenture or other governing agreement, the Reorganized Debtors shall designate a distribution agent to act in place of the Indenture Trustee, agent, or servicer, and the provisions of this Plan shall be deemed to apply to the new distribution agent.

## D.  Directors and Executive Officers

On the Effective Date, the term of each member of the current Board of Directors of TMS shall automatically expire. The initial Board of Directors of Reorganized TMS on and after the Effective Date shall consist of seven members, consisting of the current non-executive chairman of TMS's Board of Directors, TMS's chief executive officer and five members which shall be designated by the Holders of Senior Notes in accordance with the Term Sheet. The Debtors shall identify the individuals proposed to serve as directors of Reorganized TMS in the Plan Supplement, which shall be filed with the Bankruptcy Court on or before the date that is five Business Days prior to the Confirmation Hearing. The Board of Directors of Reorganized TMS shall have the responsibility for the management, control, and operation of Reorganized TMS on and after the Effective Date. The members of the management team shall maintain their current positions as executive officers of the Reorganized Debtors on and after the Effective Date, unless otherwise provided in the Plan Supplement. The current officers and directors of TMA and TMO shall also serve as the officers and directors of Reorganized TMA and Reorganized TMO, respectively, on and after the Effective Date unless otherwise provided in the Plan Supplement.

On the Effective Date, Reorganized TMS shall enter into employment agreements with its president and chief executive officer and its vice president and chief financial officer, the form of which is set forth in the Plan Supplement on the date of the commencement of solicitation of acceptances of this Plan. On the Effective Date, Reorganized TMS shall also be authorized to enter into an agreement with its non-executive chairman, the form of which shall be set forth in the Plan Supplement.

## E.  DIP Facility

On or before the Commencement Date, TMA and TMO, as borrowers, and TMS and each of its non-borrower subsidiaries other than Trico Shipping AS, as guarantors, will enter into the DIP Facility, the terms and conditions of which are set forth in the Commitment Letter and applicable documentation. The proceeds of the DIP Term Loan shall be used to repay in full, without penalty or premium, all unpaid obligations arising under the Credit Agreement.

## F.  New Securities

As of the Effective Date, 10,000,000 shares of New TMS Common Stock shall be issued, on a Pro Rata basis, to Holders of Allowed Senior Note Claims in full satisfaction of their Allowed Senior Note Claims. As a result, the Holders of the Allowed Senior Note Claims will own 100% of the shares of New TMS Common Stock issued and outstanding as of the Effective Date, subject to dilution by the issuance of shares of New TMS Common Stock upon exercise of the New Warrants and the options granted pursuant to the Long Term Incentive Plan. As of the Effective Date, and without the requirement of any further action by any Person, each former Holder of an Allowed Senior Note Claim that becomes an owner of at least 1% of the shares of New TMS Common Stock issued and outstanding as of

such date shall become a party to a Registration Rights Agreement with Reorganized TMS. The Registration Rights Agreement shall require Reorganized TMS to file a "shelf" registration statement covering resales of New TMS Common Stock after the Effective Date and shall provide the stockholders that are parties thereto with demand and piggyback registration rights following the expiration of such "shelf" registration statement. The Registration Rights Agreement shall be substantially in the form set forth in the Plan Supplement on the date of the commencement of solicitation of acceptances of this Plan.

As of the Effective Date, Reorganized TMS shall be authorized to issue to Holders of TMS Common Stock Interests, on a Pro Rata basis, the New Warrants. The New Warrants shall be exercisable in the aggregate for 10% of the number of shares of New TMS Common Stock issued and outstanding as of the Effective Date, subject to dilution by the issuance of shares of New TMS Common Stock upon exercise of the options granted pursuant to the Long Term Incentive Plan. The New Warrants will be issued pursuant to the Warrant Agreement.

As of the Effective Date, the grant by Reorganized TMS of the New Options to purchase an aggregate of seven and one-half percent (7.5%) of the number of fully diluted outstanding shares of New TMS Common Stock as of the Effective Date in accordance with the Long Term Incentive Plan shall be authorized.

The issuance, grant, and reservation of New Securities authorized in this Article IV.E. shall not require any further act or action by any shareholder or creditor of the Debtors, under applicable law, regulation, order or rule.

On or before the Distribution Date, Reorganized TMS shall issue the New TMS Common Stock and the New Warrants for Distribution pursuant to the provisions hereof. All securities to be issued shall be deemed issued as of the Effective Date regardless of the date on which they are actually distributed.

**G.    Exit Facility**

On the Effective Date, Reorganized TMA and Reorganized TMO, as borrowers, and Reorganized TMS and each of its non-borrower subsidiaries other than Trico Shipping AS, as guarantors, will enter into the Exit Facility. The Exit Facility will provide liquidity for working capital and other general corporate purposes to Reorganized TMS and its debtor and non-debtor subsidiaries following the conclusion of the Chapter 11 Cases. The proceeds of the Exit Term Loan shall be used to repay in full, without penalty or premium, the principal balance of loans outstanding under the DIP Credit Documents.

**H.    Long Term Incentive Plan**

In connection with this Plan, the Reorganized Debtors shall adopt a Long Term Incentive Plan that is intended to provide incentives to certain key employees to continue their efforts to foster and promote the long-term growth and performance of the Reorganized Debtors. The form of the Long Term Incentive Plan shall be substantially in the form set forth in the Plan Supplement on the date of commencement of solicitation of acceptances of this Plan.

**I.    Revesting of Assets**

The property of each Debtor's Estate shall revest in the applicable Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims, encumbrances, Equity Interests, charges and liens except as specifically provided or contemplated herein, in connection with the Exit Facility or in the Confirmation Order. Without limiting the generality of the foregoing, the Reorganized Debtors may, without application to or approval by the Bankruptcy Court, pay professional fees and expenses incurred after the Effective Date.

**J.    Preservation of Rights of Action; Settlement of Litigation Claims**

Except as otherwise provided herein or the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, following the Confirmation Date, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person or Entity without further approval of the Bankruptcy Court.  The Reorganized Debtors or their successor(s) may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

**K.    Exemption from Certain Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or any other Person or Entity pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**ARTICLE V.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.    Distributions for Claims and Equity Interests Allowed as of the Effective Date**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, Distributions and issuances of New TMS Common Stock and New Warrants to be made in exchange for or on account of Claims or Equity Interests that are Allowed Claims or Allowed Equity Interests as of the Effective Date shall be made on the Distribution Date, or as soon thereafter as reasonably practicable.  All Cash Distributions shall be made by the Disbursing Agent from available Cash of the Reorganized Debtors.  Any Distribution hereunder of property other than Cash (including any issuance of New TMS Common Stock and New Warrants and the Distribution of such New TMS Common Stock and New Warrants in exchange for Allowed Claims and Allowed Equity Interests as of the Effective Date) shall be made by the Disbursing Agent, the Indenture Trustee or the transfer agent in accordance with the terms of this Plan.

**B.    Disbursing Agent**

The Disbursing Agent shall make all Distributions required hereunder, except with respect to a Holder of a Claim whose Distribution is governed by an Indenture or other agreement and is administered by an indenture trustee, agent, or servicer, which Distributions shall be deposited with the appropriate indenture trustee, agent, or servicer, who shall deliver such Distributions to the Holders of Claims in accordance with the provisions hereof and the terms of the relevant indenture or other governing agreement.

If the Disbursing Agent is an independent third party designated by the Reorganized Debtors to serve in such capacity (or, in the case of the Indenture, the Indenture Trustee), such Disbursing Agent and the Indenture Trustee shall receive, without further Bankruptcy Court approval, reasonable compensation for Distribution services rendered pursuant to this Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Reorganized Debtors.

**C.    Surrender of Securities or Instruments**

On or before the Distribution Date, or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Disbursing Agent, or, with respect to the Senior Notes, the Indenture Trustee, and

17

such Certificate shall be cancelled.  No Distribution of property hereunder shall be made to or on behalf of any such Holder unless and until such Certificate is received by the Disbursing Agent or the Indenture Trustee, as the case may be, or the unavailability of such Certificate is reasonably established to the satisfaction of the Disbursing Agent or Indenture Trustee, as the case may be.  Any such Holder who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent or Indenture Trustee, as the case may be, prior to the second anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims or Equity Interests in respect of such Certificate and shall not participate in any Distribution hereunder, and all New TMS Common Stock and New Warrants in respect of such forfeited Distribution shall be cancelled notwithstanding any federal or escheat laws to the contrary.

**D.    Instructions to Disbursing Agent**

Prior to any Distribution on account of an Allowed Senior Note Claim, the Indenture Trustee shall (i) inform the Disbursing Agent as to the amount of properly surrendered Senior Notes and (ii) inform the Disbursing Agent in a properly completed letter of transmittal, accompanied by properly remitted securities, of the names of Holders of Allowed Senior Note Claims, and the number of shares of New TMS Common Stock to be issued and distributed to or on behalf of such Holders of Allowed Senior Note Claims in exchange for properly surrendered Senior Notes.

**E.    Services of Indenture Trustee**

The Indenture Trustee's services with respect to consummation of this Plan shall be as set forth herein and as authorized by the Indenture.

**F.    Record Date for Distributions**

At the close of business on the Record Date, the transfer ledgers for the Senior Secured Debt (maintained by Bear Stearns, as administrative agent under the Credit Agreement), Senior Notes and TMS Common Stock shall be closed, and there shall be no further changes in the record Holders of such debt and securities.  The Reorganized Debtors and the Disbursing Agent, if any, shall have no obligation to recognize any transfer of any such debt and securities occurring after the Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record Holders listed on the transfer ledgers as of the close of business on the Record Date.

**G.    Means of Cash Payment**

Cash payments hereunder shall be in U.S. funds by check, wire transfer, or such other commercially reasonable manner as the payor shall determine in its sole discretion.

**H.    Calculation of Distribution Amounts of New TMS Common Stock and New Warrants**

No fractional shares of New TMS Common Stock or New Warrants to purchase fractional shares of New TMS Common Stock shall be issued or distributed hereunder or by Reorganized TMS or any Disbursing Agent, Indenture Trustee, agent, or servicer.  Each Person entitled to receive New TMS Common Stock or New Warrants shall receive the total number of whole shares of New TMS Common Stock or New Warrants to purchase the total number of whole shares of New TMS Common Stock to which such Person is entitled.  Whenever any Distribution to a particular Person would otherwise call for Distribution of a fraction of a share of New TMS Common Stock or a New Warrant to purchase a fractional share of New TMS Common Stock, such number of shares or New Warrants to purchase shares to be distributed shall be rounded down to the nearest whole share.

**I.    Delivery of Distributions; Undeliverable or Unclaimed Distributions**

Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent or the Indenture Trustee, as the case may be, (a) at the Holder's last known address, (b) at the address in any written notice of address change delivered to the Disbursing Agent, (c) in the case of the Holder of an Allowed Senior Note Claim, at the address in the Indenture Trustee's official records, or (d) at the address set forth in a properly completed letter of transmittal accompanying a Certificate properly remitted in accordance with the terms hereof.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made, unless and until the Disbursing Agent or Indenture Trustee is notified of such Holder's then current address, at which time all missed Distributions shall be

made to such Holder without interest. Amounts in respect of undeliverable Distributions made through the Disbursing Agent or the Indenture Trustee shall be returned to the appropriate Reorganized Debtor or the Indenture Trustee, as the case may be, until such Distributions are claimed. All claims for undeliverable Distributions must be made on or before the second anniversary of the Effective Date, after which date (i) all Cash in respect of such forfeited Distribution including interest accrued thereon shall revert to Reorganized TMS and (ii) all New TMS Common Stock and New Warrants in respect of such forfeited Distribution shall be cancelled, in each case, notwithstanding any federal or escheat laws to the contrary.

**J.    Withholding and Reporting Requirements**

In connection with this Plan and all Distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

**K.    Setoffs**

Other than in respect of any Allowed Credit Agreement Claim or any Allowed Senior Note Claim, a Reorganized Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or Reorganized Debtor may have against the Claim's Holder; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any claim that the Debtor or Reorganized Debtor may have against such Holder. Nothing in this Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law. Notwithstanding the foregoing, the Reorganized Debtors shall be deemed to waive and shall have no right of setoff or recoupment against any Senior Note Claim, any Credit Agreement Claim or against any amounts at any time due or outstanding under the Indenture or the DIP Facility.

**ARTICLE VI.**

**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS**

**A.    Objections to Claims; Disputed Claims**

The Debtors intend to make Distributions, as required by this Plan, in accordance with the books and records of the Debtors (or in the case of the Senior Secured Debt or DIP Obligations, in accordance with the books and records of Bear Stearns as administrative agent). Unless disputed by a Holder of a Claim or Equity Interest, the amount set forth in the books and records of the Debtors shall constitute the amount of the Allowed Claim or Allowed Equity Interest of such Holder. If any Holder of a Claim or Equity Interest disagrees with the Debtors, such Holders must so advise the Debtors in writing, in which event, the Claim or Equity Interest shall be a Disputed Claim or a Disputed Equity Interest. The Debtors intend to attempt to resolve any such disputes consensually, or through other judicial means outside of the Bankruptcy Court. Nevertheless, the Debtors may, in their discretion, file with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any Claim or Equity Interest, or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order; provided, however, that the Debtors may compromise and settle, withdraw or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Claims or Equity Interests. In addition, any Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of the any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

**B.   No Distribution Pending Allowance**

Notwithstanding any other provision herein, if any portion of a Claim is a Disputed Claim or any portion of an Equity Interest is a Disputed Equity Interest, no payment or Distribution provided hereunder shall be made on account of or in exchange for such Claim or Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or an Allowed Equity Interest.

**C.   Distributions After Allowance**

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, a Distribution shall be made to the Holder of such Allowed Claim or Allowed Equity Interest in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Equity Interest the Distribution to which such Holder is entitled hereunder on account of or in exchange for such Allowed Claim.

**ARTICLE VII.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.   Assumed Contracts and Leases**

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, as of the Effective Date each Reorganized Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed on or before the Confirmation Date or (iv) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Plan Supplement. The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

**B.   Payments Related to Assumption of Contracts and Leases**

Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the applicable Debtor.  If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of a Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

**C.   Rejected Contracts and Leases**

Except as otherwise provided herein or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, none of the executory contracts and unexpired leases to which a Debtor is a party shall be rejected hereunder; provided, however, that the Debtors reserve the right, at any time prior to the Confirmation Date, to seek to reject any executory contract or unexpired lease to which any Debtor is a party.

**D.    Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All Claims arising out of the rejection of executory contracts and unexpired leases must be served upon the appropriate Debtor and its counsel within sixty (60) days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Confirmation Date.  Any such Claims not filed within such times shall be forever barred from assertion against the respective Debtor, its Estate, and its property.

**E.    Compensation and Benefit Plans and Treatment of Retirement Plan**

Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and benefit plans of the Debtors, including benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Commencement Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed hereunder.  The Debtors' obligations under such plans and programs shall survive Confirmation of this Plan, except for (i) executory contracts or employee benefit plans specifically rejected pursuant to this Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (ii) such executory contracts or employee benefit plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date, or have been specifically waived by the beneficiaries of any employee benefit plan or contract; provided, however, that the Debtors' obligations, if any, to pay all "retiree benefits," as defined in section 1114(a) of the Bankruptcy Code, shall continue unimpaired and in full force and effect.

**ARTICLE VIII.**

**ACCEPTANCE OR REJECTION OF THIS PLAN**

**A.    Classes Entitled To Vote**

Each Holder, as of the Voting Record Date of an Allowed Claim in an Impaired Class of Claims or Equity Interests that shall (or may) receive or retain property or any interest in property hereunder is entitled to vote to accept or reject this Plan.  By operation of law, (i) each Unimpaired Class of Claims or Equity Interests is deemed to have accepted this Plan and, therefore, is not entitled to vote; and (ii) each Impaired Class of Claims and Equity Interests in Classes that are not entitled to receive or retain any property hereunder are presumed to have rejected this Plan and, therefore is not entitled to vote.  In this case, only Holders of Claims in Class 6 shall be eligible to vote to accept or reject the Plan.

**B.    Acceptance by Impaired Classes**

An Impaired Class of Claims shall have accepted this Plan if the Holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class actually voting have voted to accept this Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

**C.    Elimination of Classes**

Any Class that does not contain any Allowed Claims or Equity Interests or any Claims or Equity Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether such Class has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**D.    Nonconsensual Confirmation**

The Bankruptcy Court may confirm this Plan over the dissent of any Impaired Class if all of the requirements for consensual confirmation under subsection 1129(a), other than subsection 1129(a)(8), of the Bankruptcy Code and for nonconsensual confirmation under subsection 1129(b) of the Bankruptcy Code have been satisfied.

To obtain Confirmation notwithstanding the nonacceptance of a Class, the Debtors must demonstrate to the Court that this Plan "does not discriminate unfairly" and is "fair and equitable" with respect to any dissenting Impaired

21

Classes.  A plan does not discriminate unfairly if the legal rights of a dissenting Impaired Class are treated in a manner consistent with the treatment of other Classes whose legal rights are substantially similar to those of the dissenting Impaired Class and if no Impaired Class receives more than it is entitled to for its Claims or Equity Interests.  If required, the Debtors shall show at the Confirmation Hearing that this Plan does not discriminate unfairly.

To the extent necessary, the Debtors shall request Confirmation of this Plan, as this Plan may be modified from time to time, under section 1129(b) of the Bankruptcy Code.

## ARTICLE IX.

### CONDITIONS PRECEDENT TO THIS PLAN'S CONFIRMATION AND EFFECTIVENESS

**A.  Conditions to Confirmation**

1.      The proposed Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Supporting Noteholders (as defined in and pursuant to the terms of the Plan Support Agreement) and any Committee appointed in these Chapter 11 Cases.  This condition is subject to the satisfaction or waiver in accordance with Article IX.D. below.

2.  The proposed Confirmation Order shall be satisfactory to the Exit Agent and the Required Exit Lenders in all respects that relate to, or could otherwise reasonably be expected to impact in an adverse manner, the Exit Lenders, unless (a) the DIP Facility has been terminated prior to the entry of the Confirmation Order, and (b) the Confirmation Order directs the indefeasible payment in full, in cash, of all obligations arising under the Credit Agreement or DIP Credit Documents, no later than the Effective Date and as a condition to the effectiveness of the Plan.

**B.  Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article IX.D. below:

1.  The Confirmation Order shall have been entered by the Bankruptcy Court.

2.  The Confirmation Order shall have become a Final Order.

3.  All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

4.  The Debtors shall have executed and delivered all documents necessary to effectuate the issuance of the New Securities.

5.  All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

6.  No stay of the consummation of this Plan is in effect.

**C.  Effect of Failure of Conditions**

In the event that one or more of the conditions specified in Article IX.B hereof shall not have occurred or been waived pursuant to Article IX.D. on or before May 4, 2005, (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtors and Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Order had never been entered, and (d) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any Person or governmental Entity or to prejudice in any manner the rights of the Debtors or any Person or governmental Entity in any further proceedings involving the Debtors.

**D.    Waiver of Conditions**

Each of the conditions set forth in Article IX.B above, other than as set forth in Article IX.B.1 and Article IX.B.3 through IX.B.5, may be waived in whole or in part by the Debtors with the consent of the each of the members of the Noteholder Group (which consent shall not be unreasonably withheld).  The conditions set forth in Article IX.A.! may not be waived without the consent of the each of the members of the Noteholder Group (which consent shall not be unreasonably withheld).  The condition set forth in Article IX.A.2 and Article IX.B.2 may not be waived without the written consent of the Exit Agent and the Required Exit Lenders.

## ARTICLE X.

## MODIFICATIONS AND AMENDMENTS; WITHDRAWAL

Subject to the Provisions of the Plan Support Agreement and the DIP Credit Documents, the Debtors may amend, or modify this Plan at any time prior to the Confirmation Date.  The Debtors reserve the right to include any amended exhibits in the Plan Supplement with the consent of the members of the Noteholder Group, whereupon each such amended exhibit shall be deemed substituted for the original of such exhibit; provided, however, that the Commitment letter, the DIP Credit Documents, and the Exit Credit Documents may not be amended without the consent of the parties thereto. After the Confirmation Date the Debtors or Reorganized Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies herein, the Disclosure Statement, and the Confirmation Order, and to accomplish such matters as may be necessary to carry out the purposes and extent hereof so long as such proceedings do not materially and adversely affect the treatment of Holders of Claims or Equity Interests hereunder.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding this Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and this Plan, to the fullest extent permitted by law, including jurisdiction to:

A.    hear and determine any and all objections to the allowance of Claims or Equity Interests;

B.    hear and determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

C.    hear and determine any and all motions to subordinate Claims or Equity Interests at any time and on any basis permitted by applicable law;

D.    hear and determine all Professional Fee Claims and other Administrative Claims;

E.    hear and determine all matters with respect to the assumption or rejection of any executory contract or unexp ired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation of any Claims arising therefrom;

F.    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

G.    enter such orders as may be necessary or appropriate in aid of the consummation hereof and to execute, implement, or consummate the provisions hereof and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

H.   hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan and all contracts, instruments, and other agreements executed in connection with this Plan;

I.   hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

J.   issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, consummation, or enforcement hereof or the Confirmation Order;

K.   enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

L.   hear and determine any matters arising in connection with or relating hereto, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

M.   enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

N.   recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

O.   hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

P.   hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

Q.   hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

R.   enter a final decree closing the Chapter 11 Cases.

## ARTICLE XII.

## COMPROMISES AND SETTLEMENTS

Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), the Debtors may compromise and settle various Claims against them and/or claims they may have against other Persons. Each of the Debtors expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and claims that it may have against other Persons up to and including the Effective Date. After the Effective Date, such right shall transfer to the Reorganized Debtors pursuant hereto and no Bankruptcy Court approval of any such action, compromise or settlement shall be required.

## ARTICLE XIII.

## MISCELLANEOUS PROVIS IONS

### A.   Bar Dates for Certain Claims

1. **Administrative Claims**

The Confirmation Order shall establish an Administrative Claims Bar Date for the filing of all Administrative Claims (other than Professional Fee Claims, Claims outstanding under the DIP Facility, or Claims for the expenses of the members of any Committee (if appointed)), which date shall be sixty (60) days after the Confirmation Date. Holders of asserted Administrative Cla ims, other than Professional Fee Claims or Claims for United States Trustee fees

or the expenses of the members of any Committee (if appointed), not paid and not arising out of transactions in the ordinary course of business prior to the Confirmation Date must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) shall set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtors or the Reorganized Debtors, as the case may be, shall have sixty (60) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claim.

2. **Professional Fee Claims**

All final requests for compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered to the Debtors or any Committee (if appointed) prior to the Confirmation Date must be filed and served on the Reorganized Debtors and their counsel and counsel to the Exit Lenders no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other Entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors and their counsel, the requesting Professional or other Entity, and counsel to the Exit Lenders no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

**B.  Payment of Statutory Fees**

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid by the Reorganized Debtors.

**C.  Severability of Plan Provisions**

If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**D.  Successors and Assigns**

The rights, benefits and obligations of all Persons named or referred to herein shall be binding on, and shall inure to the benefit of, their respective heirs, executors, administrators, personal representatives, successors or assigns.

**E.  INJUNCTION**

**ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES PURSUANT TO SECTIONS 105 AND 362 OF THE BANKRUPTCY CODE OR OTHERWISE AND IN EFFECT ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE IN EFFECT UNTIL THE EFFECTIVE DATE.  EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES THAT HAVE HELD, HOLD OR MAY HOLD CLAIMS OR CAUSES OF ACTION AGAINST OR EQUITY INTERESTS IN THE DEBTORS ARE, AS OF THE EFFECTIVE DATE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST ANY OF THE DEBTORS AND THEIR ESTATES, THE REORGANIZED DEBTORS, OR THEIR PROPERTY OR ASSETS ON ACCOUNT OF SUCH CLAIMS, CAUSES OF ACTION OR EQUITY INTERESTS: (A) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING RELATING TO SUCH CLAIM, CAUSE OF ACTION OR**

25

EQUITY INTEREST; (B) ENFORCING, LEVYING, ATTACHING, COLLECTING OR OTHERWISE
RECOVERING IN ANY MANNER OR BY ANY MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY
JUDGMENT, AWARD, DECREE OR ORDER RELATING TO SUCH CLAIM, CAUSE OF ACTION OR
EQUITY INTEREST; (C) CREATING, PERFECTING OR ENFORCING IN ANY MANNER, DIRECTLY
OR INDIRECTLY, ANY LIEN RELATING TO SUCH CLAIM, CAUSE OF ACTION OR EQUITY
INTEREST; (D) ASSERTING ANY SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY
KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO
THE DEBTORS RELATING TO SUCH CLAIM, CAUSE OF ACTION OR EQUITY INTEREST; AND (E)
PROCEEDING IN ANY MANNER IN ANY PLACE WHATSOEVER THAT DOES NOT CONFORM TO OR
COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE
CONFIRMATION ORDER.  NOTWITHSTANDING THIS SECTION, THE SETOFF RIGHTS OF ANY
HOLDERS OF ALLOWED CLAIMS ARE PRESERVED TO THE EXTENT OF APPLICABLE LAW.

## F.    DEBTORS' RELEASES

AS OF THE EFFECTIVE DATE, THE DEBTORS AS DEBTORS IN POSSESSION WILL BE
DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE ALL CLAIMS, OBLIGATIONS, SUITS,
JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION AND LIABILITIES
(OTHER THAN THE RIGHTS OF THE DEBTORS TO ENFORCE THE PLAN AND THE CONTRACTS,
INSTRUMENTS, RELEASES AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED
HEREUNDER) WHETHER DIRECT OR DERIVATIVE, LIQUIDATED OR UNLIQUIDATED, FIXED OR
CONTINGENT, MATURED OR UNMATURED, DISPUTED OR UNDISPUTED, KNOWN OR UNKNOWN,
FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR
OTHERWISE THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION,
EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, OR IN
ANY WAY RELATING TO THE RESTRUCTURING OF THE DEBTORS, THE CHAPTER 11 CASES, THE
PLAN, OR THE DISCLOSURE STATEMENT, AND THAT COULD HAVE BEEN ASSERTED BY OR ON
BEHALF OF THE DEBTORS, OR THEIR ESTATES AGAINST (A) THE REPRESENTATIVES,
DIRECTORS, OFFICERS AND EMPLOYEES OF THE DEBTORS AND THE DEBTORS' AGENTS,
ADVISORS AND PROFESSIONALS SERVING AS OF THE COMMENCEMENT DATE, IN EACH CASE
IN THEIR CAPACITY AS SUCH, (B) THE HOLDERS OF SENIOR NOTE CLAIMS AND THE
INDENTURE TRUSTEE FOR THE SENIOR NOTES, AND THE AGENTS, ADVISORS AND
PROFESSIONALS OF SAME, IN EACH CASE IN THEIR CAPACITY AS SUCH, (C) THE HOLDERS OF
CREDIT AGREEMENT CLAIMS AND CLAIMS UNDER THE DIP FACILITY, AND THE AGENTS,
ADVISORS AND PROFESSIONALS OF SAME, IN EACH CASE IN THEIR CAPACITY AS SUCH, AND (D)
THE MEMBERS OF ANY COMMITTEE, AND ITS AGENTS, ADVISORS AND PROFESSIONALS, IN
EACH CASE IN THEIR CAPACITY AS SUCH; PROVIDED, HOWEVER, NOTHING IN THIS ARTICLE
XIII.F. OF THE PLAN SHALL BE CONSTRUED TO RELEASE OR EXCULPATE ANY PERSON OR
ENTITY FROM FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, MALPRACTICE,
CRIMINAL CONDUCT, UNAUTHORIZED USE OF CONFIDENTIAL INFORMATION THAT CAUSES
DAMAGES OR FOR PERSONAL GAIN, OR ULTRA VIRES ACTS.

## G.    OTHER RELEASES

ON THE EFFECTIVE DATE, EFFECTIVE AS OF THE CONFIRMATION DATE, AND EXCEPT
AS OTHERWISE PROVIDED HEREIN OR IN THE CONFIRMATION ORDER, THE DEBTORS, THE
REORGANIZED DEBTORS, EACH HOLDER OF A SENIOR NOTE CLAIM, THE INDENTURE
TRUSTEE, THE SENIOR LENDERS, THE DIP LENDERS AND ANY COMMITTEE, AND EACH OF
THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, AGENTS, FINANCIAL ADVISORS,
ATTORNEYS, EMPLOYEES , EQUITY HOLDERS, PARTNERS, AFFILIATES AND REPRESENTATIVES
AND THEIR RESPECTIVE PROPERTY SHALL BE RELEASED FROM ANY AND ALL CLAIMS,
OBLIGATIONS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES WHICH THE DEBTORS,
REORGANIZED DEBTORS, OR ANY HOLDER OF A CLAIM AGAINST OR EQUITY INTEREST IN ANY
DEBTOR MAY BE ENTITLED TO ASSERT, WHETHER FOR TORT, FRAUD, CONTRACT,
VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER KNOWN
OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, BASED IN
WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER OCCURRENCE
TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE, IN ANY WAY RELATING TO THE

**CHAPTER 11 CASES OR THIS PLAN, OR OTHERWISE; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT NOTHING SHALL RELEASE ANY PERSON FROM ANY CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES ARISING OUT OF SUCH PERSON'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.**

**H.  Exculpation and Limitation of Liability**

The Reorganized Debtors, the Holders of Senior Note Claims, the Senior Lenders, the DIP Lenders, the Indenture Trustee, any Committee, and any and all of their respective present or former members, officers, directors, employees, equity holders, partners, affiliates, advisors, attorneys, or agents, and any of their successors or assigns, shall not have or incur any liability to any Holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Cases, the solicitation of acceptances hereof, the pursuit of Confirmation hereof, the consummation hereof, or the administration hereof or the property to be distributed hereunder, except for their willful misconduct or gross negligence, and in all respects they shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.

**I.  Binding Effect**

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Equity Interests in the Debtors, their respective successors and assigns, including the Reorganized Debtors, and all other parties-in-interest in the Chapter 11 Cases.

**J.  Revocation, Withdrawal, or Non-Consummation**

The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or consummation hereof does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied herein (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained herein, and no acts taken in preparation for consummation hereof, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

**K.  Committees**

On the Effective Date, the duties of any Committee shall terminate.

**L.  Plan Supplement**

Any and all agreements, exhibits, lists, or schedules referred to herein but not filed with this Plan shall be contained in the Plan Supplement and filed with the Securities and Exchange Commission contemporaneously with the commencement of solicitation hereof.  A final version of the Plan Supplement will be filed with the Clerk of the Bankruptcy Court at least five Business Days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims against or Equity Interests in the Debtors may obtain a copy of the Plan Supplement upon written request to the Debtors in accordance with Article XIII.N.

**M.  Notices to Debtors**

Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor or a Reorganized Debtor hereunder shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

TRICO MARINE SERVICES, INC.
TRICO MARINE ASSETS, INC.
TRICO MARINE OPERATORS, INC.
2401 Fountainview, Suite 920
Houston, Texas 77057
Attn:  Trevor Turbidy
Telephone:  (713) 780-9926
Facsimile:  (713) 780-0062

with a required copy to:

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
Attn: Robert G. Burns
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900

**N.  Indemnification Obligations**

Except as otherwise specifically set forth herein, any obligations or rights of the Debtors or Reorganized Debtors to defend, indemnify, reimburse, or limit the liability of the Debtors' present and former directors, officers or employees (the "Covered Persons") pursuant to the Debtors' or Reorganized Debtors' certificates of incorporation, bylaws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtors prior to the Effective Date shall be deemed executory contracts assumed hereunder and shall, in any event, survive Confirmation hereof and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Commencement Date.

**O.  Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of New York shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (ii) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

**P.  Prepayment**

Except as otherwise provided herein or the Confirmation Order, the Debtors shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, however, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**Q.  Section 1125(e) of the Bankruptcy Code**

As of the Confirmation Date, the Debtors and the members of the Noteholder Group shall be deemed to have solicited acceptances hereof in good faith and in compliance with the applicable provisions of the Bankruptcy Code. As of the Confirmation Date, the Debtors, the members of the Noteholder Group, and each of their respective affiliates, agents, directors, officers, employees, investment bankers, financial advisors, attorneys, and other professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the New Securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or the offer and issuance of New Securities hereunder.

Dated:   New York, New York
         November 12, 2004

TRICO MARINE SERVICES, INC.
TRICO MARINE ASSETS, INC.
and TRICO MARINE OPERATORS, INC.


By:  /s/ Thomas Fairley_____
      *Chief Executive Officer*


KIRKLAND & ELLIS LLP
Attorneys for Trico Marine Services, Inc.,
Trico Marine Assets, Inc. and Trico Marine
Operators, Inc.


By: /s/ Robert G. Burns_____
     Robert G. Burns
     Citigroup Center
     153 East 53rd Street
     New York, New York  10022
     (212) 446-4800